**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

RICK SKILES d/b/a B4URE
HOME INSPECTIONS,

                Plaintiff,

v.                                    CIVIL ACTION NO.  3:15-3865

EDWARD MERCADO, an individual,
NEWTEK INSURANCE AGENCY, LLC,
a foreign Limited Liability Company, and
SENTINEL INSURANCE COMPANY, LTD,
a foreign Corporation

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Sentinel Insurance Company's ("Sentinel") Motion to Dismiss, (ECF No. 5), as well as Defendant Edward Mercado ("Mercado") and Defendant Newtek Insurance Agency, LLC's ("Newtek") Motion to Dismiss, (ECF No. 15). (Sentinel, Mercado, and Newtek collectively hereinafter referred to as "Defendants"). Defendants seek dismissal of Plaintiff's claims for fraud, breach of contract, and violation of West Virginia's Unfair Trade Practices Act ("UTPA"), W. Va. Code. Ann. § 33–11–1 (West 2015), *et seq.* Sentinel also asks the Court to dismiss the vicarious liability count against it. Lastly, Defendants want Plaintiff's request for punitive damages stricken from the Complaint. For the reasons explained below, the Court **STAYS** its decision on dismissal of Plaintiff's fraud claim, **DENIES** Defendants' Motions to Dismiss Plaintiff's breach of contract, UTPA, and vicarious liability counts, and **STAYS** its decision on Defendants' request to strike Plaintiff's prayer for punitive damages.

# I.     BACKGROUND

**A.     Facts**

According to the Complaint originally filed in state court, in 2011 Plaintiff became a licensed home inspector and began doing business as B4Sure Home Inspections. To obtain insurance for his home inspection business, Plaintiff contacted Mercado and Newtek, both agents or employees of Sentinel.

Newtek, through its agent, Mercado, provided Plaintiff with a quote for an insurance policy. Newtek and Mercado's quote included a "Commercial Declination Checklist," ("Checklist"). The Checklist included types of coverage that an insurance purchaser could choose from when deciding what policy to purchase. The purchaser would mark either "accepted" or "declined." Plaintiff marked the "general liability" coverage and declined all others listed. The checklist did not show any separate category for "professional liability" and Plaintiff believed, for reasons not explained in the Complaint, this to be included under the general liability policy.

Based on a quote from Newtek, Plaintiff ultimately purchased an insurance policy from Sentinel. Sentinel then issued the policy to Plaintiff in 2012. Prior to issuing the policy, Defendants knew that Plaintiff was engaging in business as a home inspector and that Plaintiff sought coverage for liability that might be incurred arising from his business activities as a home inspector. Plaintiff renewed the policy two times, once in November 2013 and again in November 2014.

Sometime in 2013, Plaintiff was named as a defendant in two lawsuits arising from his business activities as a home inspector. At that time, Plaintiff reported the claims to his insurer, Sentinel, and requested a defense and indemnity. Sentinel declined to defend or indemnify Plaintiff against either lawsuit, claiming in denial letters dated April 15, 2013 and September 18, 2013 that Plaintiff's policy contained an exclusion for professional services by a home inspector. *Memo. in*

*Supp. of Mercado and Newtek's Mot. to Dismiss* 8, ECF No. 16; *Memo. in Supp. of Sentinel's Mot. to Dismiss* 7, ECF No. 6.

**B.      Procedural History**

On February 26, 2015, Plaintiff filed a complaint against Mercado, Newtek, and Sentinel in the circuit court of Putnam County, West Virginia. Sentinel removed the case to this Court on March 30, 2015. *Compl.*, ECF No. 1, Ex. A.

The basis for removal of this action is diversity jurisdiction under 28 U.S.C. § 1332. According to Plaintiff's Complaint, complete diversity exists because Plaintiff is a resident of West Virginia; Defendant Mercado is a resident of Texas; Defendant Newtek is a foreign limited liability corporation conducting business in West Virginia; and Sentinel is a foreign corporation conducting business in West Virginia. *Compl.* ¶ 4. Additionally, Defendant Sentinel alleged in its Notice of Removal that the amount in controversy exceeds $75,000. Notice of Removal 2–4 (Mar. 30, 2015), ECF No. 1. Although Plaintiff seeks an unstated amount of compensatory and punitive damages, Sentinel's Notice of Removal alleges that correspondence with Plaintiff's counsel indicates Plaintiff will seek around $100,000 in attorney's fees alone. *Id.* at 4.

In the Complaint, Plaintiff lodges five claims against Defendants collectively—fraud (Count I), breach of contract (Count II), violation of West Virginia's UTPA (Count III), vicarious liability (Count IV), and a prayer for punitive damages (Count V).

Defendants have moved to dismiss each of Plaintiff's claims. Having introduced the relevant background, the Court will discuss the legal standard for a motion to dismiss in Part II, sub-section A and each of Sentinel's arguments for dismissal in sub-sections B–E.

-3-

## II.      DISCUSSION

### A.      Legal Standard

When considering a motion to dismiss, a court follows a two-step approach: (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and then (2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

For the second step, a court must take the remaining factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555–56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

### B.      Fraud Claim

Defendants argue that Plaintiff's fraud claim fails as a matter of law for several reasons. First, Defendants contend that Plaintiff failed to meet the heightened pleading standard of Federal

Rule of Civil Procedure 9(b) because Plaintiff did not plead with particularity that Sentinel fraudulently induced Plaintiff. Second, Defendants contend that a fraudulent inducement claim under West Virginia law requires that the challenged agreement, here an insurance policy, was induced by a second agreement, and Plaintiff's claim fails because Plaintiff alleges no second agreement. Lastly, Sentinel alone argues Plaintiff should be bound by the terms of the contract, the allegation of fraud notwithstanding, because a party who fails to read a contract will nonetheless be bound by its terms. Defendants' arguments are dealt with in turn.

### 1.  Pleading Standards for Fraud Claims

Defendants contend that Plaintiff's fraud claim does not meet Rule 9(b)'s particularity standard because the Complaint fails to allege details such as the time, place, or contents of any of the alleged false and material misrepresentations by Defendants, as well as the identity of the person making the misrepresentations. After careful review below, the Court concludes the Complaint falls short of meeting Rule 8's plausibility pleading standard, as well as 9(b)'s particularity standard, but that Plaintiff should be granted leave to amend its Complaint.

"Rule 9 does not wholly abrogate Rule 8 . . . Courts read the rules together," 3D James Wm. Moore et al., *Moore's Federal Practice* ¶ 9.03[7] (3rd ed. 2009), and therefore plaintiffs alleging fraud "must still provide factual allegations that make their claims plausible." *Id.* ¶ 9.03[1][b]; *see also id.* ¶ 9.03[1][c].   Under Federal Rule of Civil Procedure 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In order to comply with 9(b), a plaintiff must ordinarily plead, "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Smith v. Clark/Smoot/Russell*, 14-cv-1406, 2015 WL 4717932

at *5 (4th Cir. Aug. 10, 2015); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d

776, 784 (4th Cir. 1999). This requirement serves four purposes:

> First, the rule ensures that the defendant has sufficient information
> to formulate a defense by putting it on notice of the conduct
> complained of . . . . Second, [it] protect[s] defendants from frivolous
> suits. [Third, it] eliminate[s] fraud actions in which all the facts are
> learned after discovery. Finally, [it] protects defendants from harm
> to their goodwill and reputation.

*Harrison*, 176 F.3d at 784. The Fourth Circuit has indicated that in some instances, all of these

objectives may be satisfied even when the plaintiff has failed to stringently comply with Rule

9(b)'s requirements:

> A court should hesitate to dismiss a complaint under Rule 9(b) if the
> court is satisfied (1) that the defendant has been made aware of the
> particular circumstances for which she will have to prepare a
> defense at trial, and (2) that plaintiff has substantial prediscovery
> evidence of those facts.

*Id*.

Under West Virginia common law, the elements for fraud are: (1) the act allegedly

fraudulent was the act of the defendant or induced by the defendant; (2) the defendant's act was

material and false, and the plaintiff relied upon it and was justified under the circumstances in

relying upon it; and (3) the plaintiff was damaged because of its reliance. Syl. pt. 3, *Cardinal State

Bank, Nat. Ass'n v. Crook*, 399 S.E.2d 863, 864 (W. Va. 1990); Syl. pt. 1*, Lengyel v. Lint*, 280

S.E.2d 66, 67 (W. Va. 1981); *Horton v. Tyree*, 139 S.E. 737 (W. Va. 1927). In cases brought by

insureds against insurers, West Virginia common law fraud contains the same essential elements.

*See e.g.*, *Romano v. New England Mut. Life Ins. Co.*, 362 S.E.2d 334, 340-41 (W. Va. 1987) (citing

*Lengyel* and *Horton* and applying common law elements for a fraud claim to case brought by

insured against insurer).

Applying Rule 8's two-step process set-forth in *Twombly-Iqbal*, this Court must first strip

-6-

the Complaint of conclusory legal allegations, and second, taking the remaining factual allegations in the Complaint as true, ask whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 569. After stripping the Complaint of legal conclusions,[1] the following facts supporting Plaintiff's fraud claim remain: To obtain insurance for his home inspection business, Plaintiff contacted Mercado and Newtek, both agents or employees of Sentinel. All three Defendants knew, prior to issuing the policy to Plaintiff, that Plaintiff sought coverage for liability that Plaintiff might incur through his home inspector business activities.[2] Newtek, through Mercado, provided Plaintiff with a quote for an insurance policy. Newtek and Mercado's quote included a Checklist setting forth coverage options, which did not include a category for "professional liability"; Plaintiff chose the "general liability" coverage and declined all others, believing for unstated reasons that professional liability was included within general liability.

Even viewing these remaining facts that support Plaintiff's fraud claim in a light most favorable to Plaintiff, the Complaint does not state a fraud claim that is plausible on its face. First, the Complaint fails to allege facts sufficient to satisfy the second element of a fraud claim. Specifically, there are no facts supporting an inference that any of the defendants made a false representation to Plaintiff simply by knowing he sought insurance for his home inspection business

---

[1] The Complaint's fraud count alleges in its entirety: Defendants knew or should have known that Plaintiff, prior to purchasing insurance, was in the home inspection business; Defendants knew or should have known that Plaintiff sought coverage for any liability that might arise from Plaintiff's home inspection business, including professional liability coverage; Defendants fraudulently induced Plaintiff to purchase the policy, which Defendants knew or should have known did not provide the professional liability coverage they knew or should have known Plaintiff sought; Defendants made false material misrepresentations about the policy to Plaintiff; and Plaintiff relied on the false and material misrepresentations. *Compl.* ¶¶ 21–28.
[2] Although this knowledge is alleged generally, general allegations of knowledge are proper under Federal Rule 9(b). Fed. R. Civ. P. 9(b).

and then sending him the quote and Checklist. The Checklist, by listing general liability as a coverage option but not stating what it covered and excluded, was vague about those activities it covered and those it did not. Although it was vague, the Court cannot infer from Defendant's knowledge and the Checklist's vagueness that these two facts alone constituted a false representation on Defendants' part.

Second and still under the second element of fraud, there are insufficient facts to support an inference that Plaintiff, after only reviewing a vague quote sheet, was justified in believing that the general liability policy would cover all the activities of his business, including home inspection services. The Complaint alleges that Plaintiff selected a general liability option from a checklist that did not contain an option to decline professional liability coverage, and that Defendants knew Plaintiff sought insurance that would cover the activities of his business as a home inspector. From this, Plaintiff asks the Court to infer that Plaintiff was justified in believing the general liability coverage option included all the activities of his business, including home inspection services, and that Plaintiff was justified in believing this in the absence of any representation by Defendants specifically to that effect. On the contrary, the facts alleged suggest such an inference would be unreasonable. An equally plausible inference would be that Plaintiff was not justified in relying on a vague policy description without asking Defendants for more information about the extent of that policy's coverage. Based on the facts alleged, the Court cannot draw the inference that Plaintiff's belief was justified; such an inference would be unreasonable under the plausibility pleading standard. The plausibility pleading standard requires more than sheer possibility, and where a plaintiff has pled facts that are merely consistent with a defendant's liability, it stops short of plausibility. *Iqbal*, 556 U.S. at 678. Applying *Twombly-Iqbal's* plausibility pleading standard, the Court cannot, without more facts alleged, reasonably infer Plaintiff's belief was justified under

these circumstances.[3]

On top the *Twombly-Iqbal* plausibility pleading deficiencies, the Complaint also fails to satisfy 9(b)'s particularity requirement. In order to satisfy Rule 9(b), a plaintiff must plead the time, place, and contents of the false representations, as well as the identity of the entity making the misrepresentation and what that entity obtained thereby. *Harrison*, 176 F.3d at 784. Here, Plaintiff has met some but not all of 9(b)'s requirements. Plaintiff's Complaint identified Mercado as the person who provided the quote—the allegedly false representation. But the Complaint is silent on most of the contents and circumstances surrounding the quote, including how, when, and where the quote was delivered. Additionally, the fraud claim should address more closely the type of facts omitted from the quote, where the omitted facts should have been stated by Defendants, and the way in which the omitted facts made the representation misleading. *See Moore et al.*, *supra* ¶ 9.03[1][b]. Furthermore, the Complaint should allege what each Defendant gained by Mercado making a misrepresentation by supplying a vague quote. Lastly, and most importantly, the Complaint fails to disclose how the defendants came to know that Plaintiff sought insurance for the home inspection services his business provides. The circumstances surrounding Defendants' knowledge of Plaintiff's purpose in obtaining insurance is a critical part of Plaintiff's assertion that Defendants made a false representation by delivering a vague quote. All of these facts should be

---

[3] For instance, from the Complaint it appears Plaintiff did not ask Defendants for any clarification about what was meant by general liability and whether it would cover all of his business's activities, including home inspection services. There are many activities a business engages in, and it would be unjustified for an insured to believe, without inquiry into the extent of a policy's coverage, that every single activity is covered under the policy. For example, a reasonable car owner would understand that there are many disasters that could happen to her car that would not be covered by a basic insurance policy purchased for the car, and so the car owner would inquire into those foreseeable disasters she wants covered. The Complaint in this case, in order to satisfy the justifiable reliance part of a fraud claim, should allege why it was justifiable for Plaintiff to not request this sort of clarification.

within Plaintiff's pre-discovery knowledge and alleging them in the Complaint will make Defendants better aware of the circumstances for which they will have to prepare a defense. *See Harrison*, 176 F.3d at 784 (discussing purposes of Rule 9(b)).

To conclude, Plaintiff has come short of meeting Rule 8's plausibility pleading standard, as well as Rule 9(b)'s particularity standard. However, the Court will stay its decision on Defendant's motion to dismiss Plaintiff's fraud claim, and it will grant Plaintiff leave to amend the Complaint's fraud claim on or before fourteen days after the entry of this Order. The Court finds that leave should be granted here because there is no indication that granting leave to amend would be prejudicial or futile, *see Johnson v. Oroweat Foods Co*., 785 F.2d 503, 509–10 (4th Cir. 1986), and justice requires that Plaintiff be permitted to amend this Complaint— initially filed in West Virginia state court and later removed by Defendants to federal court—so that it meets the pleading standards of federal court. Fed. R. Civ. P. 15(a)(2); *see also U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 920 (4th Cir. 2013) *cert. denied*, 135 S. Ct. 2376, 192 L. Ed. 2d 177 (2015) ("Because the [plaintiffs] have not had the opportunity to amend their complaint, we believe it would be improper to rely on any Rule 9 deficiencies to affirm the district court's dismissal of the action with prejudice."); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing*, Inc., 674 F.3d 369, 379 (4th Cir. 2012) ("a request to amend should only be denied if one of three facts is present: 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.'"). To survive the stayed motion to dismiss, the amended complaint should add missing factual allegations discussed above so that the fraud claim meets the plausibility and particularity pleading standards.

**2. West Virginia Fraudulent Inducement Claims**

Second, Defendants argue that a fraudulent inducement claim under West Virginia law requires a separate agreement that induced the plaintiff to enter into the challenged agreement, and the fraud claim in this case fails because Plaintiff alleges no separate agreement that induced him to purchase the challenged insurance policy. After considering this argument, the Court concludes Defendants' characterization of West Virginia's essential elements of a fraud claim is incorrect.

The Court rejects Defendants' argument from *Traders Bank v Dils*, 704 S.E.2d 691 (W. Va. 2010) that every fraud in the inducement claim under West Virginia common law requires an oral promise that induces another agreement. In *Dils* the West Virginia Supreme Court of Appeals dealt with interpreting the "exception to the general rule that fraud cannot be predicated on a promise not performed." *Id.* at 695. The exception, as the court explained, "comes into play where the device used to accomplish the fraud is a promise." *Id.* Fraud in the inducement may be accomplished by acts other than promises to the Plaintiff. *See e.g.*, *White v. Nat'l Steel Corp.*, 938 F.2d 474, 490 (4th Cir. 1991) ("In West Virginia, the elements of a claim of fraudulent inducement of a contract are that: the allegedly fraudulent act was committed by the defendant; the act was material and false; the plaintiff justifiably relied upon the act; and the plaintiff was damaged because he relied upon it") (citing *Lengyel*, 280 S.E.2d at 69). Any fraudulent or material misrepresentation that induces a party's manifestation of assent will be sufficient for a fraudulent inducement claim, Restatement (Second) of Contracts § 164 (Am. Law Inst. 1981), and under West Virginia law, promises are not the exclusive means by which fraud in the inducement may be carried out. *See e.g.*, *Friel v. Kenton Meadows Co.*, No. 12-1470, 2013 WL 5676799, at *4 (W. Va. Oct. 18, 2013). Therefore, the Court rejects Defendants' argument from *Dils* and other cases that every fraud in the inducement claim under West Virginia common law requires a promise as

the source of inducement.

### 3. Failure to Read Contract

Last, Sentinel alone argues that Plaintiff should be bound by the terms of the insurance contract—specifically the policy exclusion for home inspection services—because a party who fails to read a contract will be bound nonetheless by its terms, allegations of fraud notwithstanding. Plaintiff retorts by pointing out that under West Virginia law, insurance contracts are deemed contracts of adhesion and insureds will not be held to have read them.

Assuming a valid fraud claim exists here, Plaintiff will not be bound by the terms of a contract he entered into due to Defendant's fraud. *See Hager v. Am. Gen. Fin., Inc.*, 37 F.Supp.2d 778, 788 (S.D. W. Va. 1999) (citing *Acme Food Co. v. Older*, 61 S.E. 235, 236 (W. Va. 1908)). "Where there is fraud . . . , a signing party will not necessarily be bound by the written instrument's terms." *O'Brien v. Quicken Loans, Inc.*, No. 12-5138, 2013 WL 2319248 at *7 (S.D.W. Va. May 28, 2013) (citations omitted); *Lenhart v. Bank of Am., N.A.*, No. 12-4184, 2013 WL 1814820 at *11 (S.D.W. Va. Apr. 29, 2013) (citations omitted). Therefore, assuming Plaintiff's assent to the insurance contract was induced by fraud, it is no defense that Plaintiff should have read the insurance contract and determined that it excluded home inspector services.

To conclude, Plaintiff's fraud claim fails to meet Rule 8's plausibility pleading standard established by *Twombly-Iqbal* and Rule 9(b)'s particularity pleading requirement. However, justice requires granting Plaintiff an opportunity to avoid the fraud claim's dismissal by amending the Complaint. For this reason, the Court **STAYS** its decision on Defendant's motion to dismiss Plaintiff's fraud claim, and it **GRANTS** Plaintiff leave to amend the complaint's fraud claim on or before fourteen (14) days from the entry of this order.

-12-

C.      **Breach of Contract and UTPA Claims**

First, Defendants argue that Plaintiff's breach of contract and UTPA claims should be dismissed because they are both barred by their respective statutes of limitations. Second, Defendants contend that the breach of contract claim, to the extent it is based upon Defendants' failure to tell Plaintiff what lines of coverage Plaintiff should purchase, fails as a matter of law.

Turning to Defendants' first argument, Plaintiff's breach of contract claim is not barred by the applicable statute of limitations. West Virginia's statute of limitations for a breach of contract claim is ten years. W. Va. Code § 55–2–6. "[T]he statute of limitations begins to run when the breach of the contract occurs or when the act breaching the contract becomes known." *McKenzie v. Cherry River Coal & Coke Co.*, 466 S.E.2d 810, 817 (W. Va.1995). Here, Plaintiff alleges Defendants breached their insurance contract with Plaintiff by (1) failing to provide the type of insurance they knew Plaintiff sought, and (2) declining to defend or indemnify Plaintiff in suits brought against him arising from his home inspection work. As for the first alleged breach, assuming there was ever an agreement between Plaintiff and Defendants that placed such a duty on Defendants, the alleged breach occurred on November 8, 2011 when Sentinel issued the policy to Plaintiff. *Compl.* ¶ 13. As for the second alleged breach, Defendants refused to defend or indemnify Plaintiff in 2013. Plaintiff originally filed this action in state court on February 26, 2015. Thus, Plaintiff filed his claim based on these two alleged breaches of contract well within West Virginia's ten-year statute of limitations for breach of contract claims.[4]

---

[4] The Court has considered Defendants' argument that Plaintiff's breach of contract claim should be construed as a common law bad faith claim, *see Reply of Def. Mercado and Newtek* at 3, ECF No. 20, but finds it unpersuasive. Plaintiff alleges Defendants had contractual duties to (1) provide him with professional liability insurance for home inspection services and (2) defend and indemnify him for any suit arising out of his home inspection services. Whether such contractual duties existed is the essence of this breach of contract claim, and for that reason the Court will not assume for purposes of this motion to dismiss, as Defendants invite in their briefs, that such duties did not exist.

As for Plaintiff's UTPA claim, the Court cannot, in resolving this motion to dismiss, find that Plaintiff's UTPA claim based on Sentinel's refusal to indemnify Plaintiff is barred by the applicable statute of limitations. West Virginia has a one-year statute of limitations for UTPA claims. Syl. pt. 1, *Wilt v. State Auto Mut. Ins. Co.*, 506 S.E.2d 608 (W. Va. 1998). And Plaintiff does not dispute this one-year statute of limitations is applicable to his UTPA claims based on Sentinel's refusal to defend and Sentinel's refusal to indemnify. *Pl.'s Resp. to Mercado and Newtek's Mot. to Dismiss* 5, ECF No. 19; *Pl.'s Resp. to Sentinel's Mot. to Dismiss* 5, ECF No. 9. Instead, Plaintiff disputes when the one-year statute of limitations began to run on his UTPA claim for refusal to indemnify.[5] Plaintiff contends the statute of limitations began to run in May and November of 2014, when he settled the two cases lodged against him for which he requested Sentinel's defense and indemnity. Defendants contend the statute of limitations began to run in April and September of 2013, when denial of coverage letters were issued to Plaintiff. If Plaintiff correctly identified the triggering event for the statute of limitations, his UTPA refusal to indemnify claim was timely filed when he lodged his Complaint in February 2015. If Defendant

---

[5] Only the timeliness of a UTPA claim based on refusal to indemnify is at issue here. Plaintiff and Defendants appear to agree that the statute of limitations for Plaintiff's UTPA claim based on Sentinel's refusal to defend began to run when Plaintiff knew or should have known Sentinel refused to defend him in 2013, when Sentinel issued denial letters to that affect. *See Pl.'s Resp. to Mercado and Newtek's Mot. to Dismiss* at 5; *Pl.'s Resp. to Sentinel's Mot. to Dismiss* at 5; *Sentinel's Reply* 3, ECF No. 11; *Mercado and Newtek's Reply* 4, ECF No. 20. Because Plaintiff filed his Complaint in 2015, any UTPA claim for refusal to defend that Plaintiff had against Sentinel is barred by the one-year statute of limitations. Additionally, any UTPA claim based on Defendants' misrepresentations, *see Compl.* ¶¶ 36, 37 (alleging UTPA violations based on Defendants' misrepresenting conditions or terms of the policy and misrepresenting the policy in order to obtain a fee, money, or other benefit), would also be time-barred because Plaintiff would have discovered those injuries when Defendants failed to defend Plaintiff in 2013; Plaintiff has not alleged any facts indicating fraudulent concealment on Defendant's part; and Plaintiff has not pointed to any other doctrine for tolling the statute of limitations on his UTPA misrepresentation claims. *See* Syl. pt. 5, *Dunn v. Rockwell*, 225 W. Va. 43, 46, 689 S.E.2d 255, 258 (2009).

identified the appropriate triggering event, Plaintiff's UTPA claim is barred by the one-year statute of limitations.[6]

West Virginia courts apply a five-step analysis to determine whether a cause of action is time-barred:

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp.*, Inc., 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

Syl. pt. 5, *Dunn v. Rockwell*, 225 W. Va. 43, 46, 689 S.E.2d 255, 258 (2009).

---

[6] As an initial matter, the Parties discuss at length the Supreme Court of Appeals of West Virginia's decision in *Noland v. Virginia Ins. Reciprocal*, 686 S.E.2d 23 (W. Va. 2009), but the Court finds *Noland* inapplicable to Plaintiff's UTPA refusal to indemnify claim. *See Noland*, 686 S.E.2d at 40 ("[W]e now hold that, in a first-party bad faith claim that is based upon an insurer's refusal to defend, and is brought under [the UTPA, codified at] W. Va. Code § 33–11–4(9) . . . the statute of limitations begins to run on the claim when the insured knows or reasonably should have known that the insurer refused to defend him or her in an action. Let us be clear. This holding applies only to a bad faith claim predicated on a *refusal to defend*. We make no ruling as to when the statute of limitations begins to run on a bad faith claim that is predicated on a different theory, e.g*., refusal to indemnify*."). Because the Supreme Court of Appeals in *Noland* explicitly stated its holding does not apply to UTPA claims based on refusals to indemnify, this Court will not apply *Noland* in determining whether Plaintiff's UTPA claim predicated on Sentinel's refusal to indemnify is time-barred.

In this case, at step two the Court is presented with a factual issue precluding dismissal of Plaintiff's UTPA claim for refusal to indemnify. First, the Court has identified a one-year statute of limitations for UTPA claims. Second, the Court "should identify when the requisite elements of the cause of action occurred." *Dunn*, 689 S.E.2d at 265. West Virginia's UTPA prohibits a person from engaging "in any trade practice which is defined . . . as . . . an unfair or deceptive act or practice in the business of insurance." W. Va. Code. § 33–11–3. A UTPA claim based on refusal to indemnify falls under the UTPA definition of unfair claim settlement practices set forth at W. Va. Code § 33–11–4(9). *See Noland*, 686 S.E.2d at 40 (discussing insurance company's refusal to defend). In order to establish a violation of the UTPA based on an insurer's handling of a single claim, a plaintiff must demonstrate that the insurer (1) violated the UTPA in the handling of the claim and (2) committed violations of the UTPA with such frequency as to indicate a general business practice. *Holloman v. Nationwide Mut. Ins. Co.*, 617 S.E.2d 816, 217 (W. Va. 2005).

Plaintiff alleges that Defendants violated the UTPA by refusing to indemnify him from two lawsuits brought against him related to his home inspection services. The Parties disagree over whether Plaintiff's UTPA refusal to indemnify claim arose in 2013, when Sentinel issued its denial of coverage letters, or whether the claim arose in 2014, when Plaintiff settled the cases against him for which he sought indemnity. *See See Pl.'s Resp. to Mercado and Newtek's Mot. to Dismiss* at 6 (arguing duty to indemnify was triggered by settlements in 2014); *Pl.'s Resp. to Sentinel's Mot. to Dismiss* at 6 (same); *Sentinel's Reply* at 6 (arguing duty to indemnify was triggered by denial of coverage letters in 2013); *Mercado and Newtek's Reply* at 5 (same). Construing the facts alleged in a light most favorable to Plaintiff, a reasonable fact finder could determine Plaintiff's UTPA-related injury occurred in 2014. Although Plaintiff became aware of Sentinel's refusal to indemnify two claims in 2013, Plaintiff had no obligation to pay-out on the claims against him

until he settled the suits against him in 2014. Moreover, a valid UTPA claim against an insurer based on a single claim requires showing more than a single violation of the UTPA, and the point at which Sentinel's alleged violations gave rise to a viable UTPA claim presents a factual question a reasonable jury could resolve in Plaintiff's favor.[7] Construing the facts in a light most favorable to Plaintiff, his UTPA refusal to indemnify claim could have arisen as late as 2014, and if so, would have been timely when brought in 2015. Therefore, the Court will stop at step two of the *Dunn* analysis and not decide in this motion to dismiss whether Plaintiff's UTPA refusal to indemnify claim is time-barred.[8]

Turning to Defendants' second argument, they contend Plaintiff's breach of contract claim, to the extent it is based upon Defendants' failure to advise him on his insurance coverage needs, fails as a matter of law because West Virginia does not recognize a cause of action against an insurer for such. The Complaint alleges Defendants "breached their contract with [P]laintiff by failing to provide [P]laintiff with the type of insurance which they knew he sought to purchase."

---

[7] *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1, 13 (W. Va. 1996) ("[T]o maintain a private action based upon alleged violations of W. Va. Code § 33–11–4(9) in the settlement of a single insurance claim, the evidence should establish that the conduct in question constitutes more than a single violation of W. Va. Code § 33–11–4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, *the finder of fact* is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.") (emphasis supplied). Presumably the denial of coverage letters were two violations, and a reasonable fact finder could conclude that leaving Plaintiff to defend the suits against him constituted further UTPA violations based on the refusal to indemnify, and a reasonable fact finder could further conclude that those later UTPA violations are necessary to establish the sort of general business practice the UTPA requires for liability based on handling a single claim. *See id.* at 12 (finding evidence of several UTPA violations during negation process over a single insurance claim).

[8] This does not preclude the Court from taking up the *Dunn* analysis of Plaintiff's UTPA refusal to indemnify claim again, in a motion for summary judgment.

*Compl.* ¶ 32. In Plaintiff's Response to Defendants' motions to dismiss, Plaintiff explains he did not:

> contend that [D]efendants failed to advise him as to what lines of insurance he should purchase. . . Rather, [P]laintiff knew what he wanted, advised [D]efendants what he wanted, and [D]efendants failed to inform him that the policy sold to him did not contain the professional liability coverage he wanted. Defendants never informed [P]laintiff he wasn't getting professional liability coverage.

*Pl.'s Resp. to Mercado and Newtek's Mot. to Dismiss* at 5. Neither party has cited, nor has the Court found, West Virginia case law directly answering whether under West Virginia law Defendants would have a duty to advise on insurance coverage needs in the circumstances of this case. Moreover, looking to Plaintiff's Response and construing the facts alleged in a light most favorable to Plaintiff, the doctrine of reasonable expectations may supply the relevant basis for Plaintiff's breach of contract claim. *See* Syl. pt. 2, *Costello v. Costello*, 465 S.E.2d 620, 621 (W. Va. 1995) ("With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants . . . regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."). In the absence of any West Virginia case law directly on point and with the possible applicability of the doctrine of reasonable expectations, the court will not dismiss Plaintiff's breach of contract claim to the extent it is based on Defendants' failure to provide the type of insurance they knew Plaintiff sought.

## D.     Vicarious Liability Claim

Sentinel argues that Plaintiff's vicarious liability claim must be dismissed because all of the claims underlying it (fraud, UTPA, and breach of contract) fail as a matter of law. In this order, the Court has denied or stayed Defendants' Motions to Dismiss with regard to Plaintiff's fraud, breach of contract, and UTPA claims. As such, it is improper to dismiss Plaintiff's vicarious

liability claim against Sentinel. The Court **DENIES** Sentinel's Motion to Dismiss Plaintiff's vicarious liability claim.

### E.    "Standalone Claim" for Punitive Damages

Lastly, Defendants argue that Plaintiff's "standalone claim" for punitive damages should be dismissed because West Virginia law does not recognize a cause of action for punitive damages. *Memo. in Supp. of Mercado and Newtek's Mot. to Dismiss* 8; *Memo. in Supp. of Sentinel's Mot. to Dismiss* 7. In the following paragraphs, the Court asks whether, as a matter of law, punitive damages may be awarded for each of the counts in Plaintiff's Complaint—fraud, breach of contract, and UTPA violation.[9]

Beginning with Plaintiff's fraud claim, punitive damages may be available in this case. Under West Virginia law punitive damages are available only when the legislature authorizes them or the defendant's conduct in a particular case "meets the heightened standard of 'gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others.'" *Manor Care, Inc. v. Douglas*, 763 S.E.2d 73, 96 (W. Va. 2014) (citing Syl. pt. 4, in part, *Mayer v. Frobe*, 22 S.E. 58 (W. Va. 1895)). A fraud claim may support a punitive damages award if there is evidence that the fraud is "gross." *Id.* In this case, Plaintiff's fraud claim may support a punitive damages award, depending on whether Plaintiff files an amended complaint that sets forth facts stating a plausible claim for gross fraud. Additionally, facts pertinent to the issue of gross fraud may be unearthed during discover. Ultimately, the trier of fact determines whether a fraud claim will support an award of punitive damages. *Id.* Therefore, depending on the trier of fact's decision, Plaintiff's fraud claim may support a punitive damages

---

[9] For clarification, the Court construes Plaintiff's "claim" for Punitive Damages in Count V as a request for punitive damages, not an attempt to allege a distinct cause of action.

award against Sentinel. The Court **STAYS** until after Plaintiff files an amended complaint its decision on whether to strike Plaintiff's request for punitive damages on his fraud claim.

Turning to Plaintiff's breach of contract claim, under West Virginia law, punitive damages are generally not available in contract actions absent willful, wanton, malicious, oppressive conduct on defendant's part. *C.W. Development, Inc. v. Structures, Inc. of West Virginia*, 185 W. Va. 462, 466, 408 S.E.2d 41, 45 (1991); *Horn v. Bowen*, 136 W. Va. 465, 469, 67 S.E.2d 737, 739 (1951). In an action against an insurer for breach of contract, "punitive damages may be awarded to an insured if the insurer actually knew that the [denied] claim was proper and the insured can prove that it was willfully, maliciously and intentionally denied." *Berry v. Nationwide Mut. Fire Ins. Co.*, 181 W. Va. 168, 176, 381 S.E.2d 367, 375 (1989). Here, the Complaint alleges that Defendants knew Plaintiff's insurance policy did not cover the claim he submitted. *Compl.* ¶ 24. Thus, Plaintiff has not alleged Defendants knew the denied claim was proper. Nor does the Complaint otherwise allege conduct that would amount to Defendants' willful, wanton, malicious, or oppressive breach of Plaintiff's insurance contract. Therefore, Plaintiff has not alleged facts that would support granting punitive damages on Plaintiff's breach of contract claim. However, the Court **STAYS** its decision on whether to strike Plaintiff's request for punitive damages on his breach of contract claim. Concurrent with the earlier leave granted for amending the Complaint, Plaintiff may either (1) allege additional facts to support his request for punitive damages on his breach of contract claim, or (2) omit this request for relief in the amended complaint to be filed.

As for Plaintiff's UTPA claim, under West Virginia law, determining whether an insurer should be subject to punitive damages for denying an insured's claim falls under the test set forth in *Hayseeds, Inc., v. State Farm Fire & Cas.*, 352 S.E.2d 73 (W.Va.1986), which held that: "[P]unitive damages for failure to settle a property dispute shall not be awarded against an

insurance company unless the policyholder can establish a high threshold of actual malice in the settlement process." *Id.* at 80 "Actual malice" means "the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim." *Id.* at 80–81. Though *Hayseeds* dealt with a claim for common law bad faith, its "actual malice" standard has been applied to other claims asserted against insurers under the UTPA. *See McCormick v. Allstate Ins. Co.*, 505 S.E .2d 454, 458–89 (W. Va. 1998) (collecting cases and discussing); *see also Dunfee v. Allstate Ins. Co.*, 2:10-cv-01308, 2011 WL 4544079, at *6 (S.D. W. Va. Sept. 29, 2011). As mentioned above, Plaintiff has not alleged the prerequisite for actual malice, specifically, facts supporting an inference that Defendants knew the denied claim was proper when Sentinel refused to indemnify Plaintiff. Therefore, Plaintiff has not alleged facts that would support granting punitive damages on Plaintiff's UTPA claim. However, the Court **STAYS** its decision on whether to strike Plaintiff's request for punitive damages on his UTPA claim. Concurrent with the earlier leave granted for amending the Complaint, Plaintiff may either (1) allege additional facts to support his request for punitive damages on his UTPA claim, or (2) omit this request for relief in the amended complaint to be filed.

### III.   CONCLUSION

For the foregoing reasons, the Court **STAYS** its decision on Defendants' Motions to Dismiss Plaintiff's fraud claim, and it **GRANTS** Plaintiff leave to file an amended complaint on or before fourteen (14) days from the entry of this order. Additionally, the Court **DENIES** Defendants' Motions to Dismiss Plaintiff's breach of contract and UTPA claims, **DENIES** Defendants' Motion to Dismiss Plaintiff's vicarious liability claim, and **STAYS** its decision on Defendants' request to strike Plaintiff's prayer for punitive damages on his fraud, breach of contract, and UTPA claims.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        January 14, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE